OPINION OF THE COURT
Thomas H. Scuccimarra, J.
Blossom Evans alleges that on September 11, 2012, at approximately 9:30 a.m., she tripped and fell as the result of the negligent failure of the City University of New York at Brooklyn College (CUNY) and the State of New York to keep the sidewalk area abutting the school property reasonably safe for pedestrian travel. More specifically, she alleges she was caused to fall while walking northbound on the eastern sidewalk of Bedford Avenue, adjacent to the southwest corner of Boylan Hall, as a result of a dangerous and defective condition in the pavement, in the form of a broken, cracked and depressed sidewalk flag. This decision addresses the issue of liability only, after a one-day trial of the matter and submission of posttrial memoranda of law.
In addition to her own testimony in support of her claim, claimant offered the testimony of William Elfstrom, currently employed as the Administrative Superintendent at CUNY Brooklyn College, and various photographs. (Exhibits 1, 1A, 2, 3, 4, 5.) The defendants cross-examined the witnesses, and offered deposition testimony of claimant as well as various photographs. (Exhibits A, B, C, D, DI, E, F.)
Ms. Evans said that on September 11, 2012, she was leaving the CUNY campus for a bus stop on Bedford Avenue, after picking up information about obtaining her high school equivalency diploma. She entered and left the campus by the same gate, walking along an iron fence and CUNY to her right, and the traffic of Bedford Avenue on her left. She said she walked on a different section of pavement when she entered than the pavement she traversed when she had her accident. There were a lot of school children on the “very crowded” *223 sidewalk.[1] The nearest person was “about . . . two feet” away, as she looked straight ahead toward the bus stop. She was not looking at the ground, but rather “looking ahead.” (TV at 21.) She then tripped and fell.
After claimant fell, she determined that she had fallen because she “tripped on a broken pavement on the sidewalk . . . about two to three inches deep, and about eight to twelve [inches] long in length.” (TV at 18.) She identified the area of her fall on photographs. (Exhibits 1, 1A, A.) The photographs show that near the meeting point of four pavement slabs— where she indicated that she fell (exhibit 1A)—there are some small, broken up pieces of pavement, at the farthest point away from the tree well on the two slabs nearest the tree well. (Exhibits 1, 1A, A.) She thought she might have blacked out for a while, because she heard children around her telling her to get up, so she then got up “right away.” (TV at 19.) The children gave her a Band-Aid, and she walked up the street to the bus stop, and got on the bus.
On cross-examination, Ms. Evans confirmed that she left the scene without reporting the accident to anyone, explaining that she “was ashamed” to report the matter to the manned security station she had noted near the gate. (TV at 31.) In terms of the depth of the break in the area of pavement on which she fell, claimant agreed that it was “not six inches deep” but rather “a couple of inchfes].” (TV at 35.) When she fell, she fell forward, and braced her fall with her hand. Her foot was in the depression (which was how she perceived what caused her to fall).
In deposition testimony read on defendants’ case, Ms. Evans testified that the sidewalk had “a lot of broken pavement. It’s very bad down there.” (TV at 100.)
William Elfstrom, Administrative Superintendent at CUNY Brooklyn College for the last 10 years, and an 18-year employee of the school, indicated he was responsible for the “day-to-day operations, maintenance, [and] minor construction projects” there. (TV at 54.) He expressed himself as familiar with the maintenance and repair work that was performed at the University. It was his understanding that the Dormitory Authority of the State of New York (DASNY) was the owner of the property on which CUNY Brooklyn was located, within the iron fence, and the City of New York was the owner of the *224 sidewalk abutting the property on which claimant fell. In terms of maintenance responsibilities, no CUNY employees had ever performed any inspections or repairs of the sidewalk areas outside the physical plant of the school—that is, beyond the iron fence and in the area where claimant fell—nor had he ever been advised that it was part of his job to see that the subject sidewalk was inspected, repaired or maintained.
On the point of what entity—the State of New York in the form of DASNY, or CUNY—had cleared snow, and removed garbage and debris from the subject sidewalk in the past, Mr. Elfstrom’s testimony was not clear, because the questions posed by counsel were not clear. For example, counsel asked the witness whether “in 2012 . . . the State perform [ed] any maintenance work to the sidewalks adjacent to Boylan Hall along Bedford Avenue.” (Tr at 54.) When Mr. Elfstrom responded “no” and that he “[did not] know” why the State did not perform such work, it is manifest that Mr. Elfstrom was not talking about CUNY. (Tr at 54.) With regard to questions about snow removal, ultimately it appears that Mr. Elfstrom was testifying that CUNY personnel—directed by a different superintendent in charge of “laborers and custodial”—removed snow as a “courtesy” to the public, in his understanding. (Tr at 55-56.) Likewise, although counsel asked whether the State removed garbage and debris from the sidewalk outside the fence, Mr. Elfstrom responded that CUNY personnel did remove such materials “so it don’t blow inside the campus, because the rod iron is spread, so all that debris and bottles . . . will go into the grass and machines run it over” (tr at 56).
Mr. Elfstrom said that there was no reason for CUNY personnel to “walk the sidewalks” because they “[do not] belong to Brooklyn College.” (Tr at 58.) He said “Boylan Hall belongs to the Dormitory Authority . . . the Dormitory Authority owns the buildings, so in retrospect, the City University is really a tenant of the Dormitory Authority” (tr at 58). As a tenant, he said, CUNY has an obligation to maintain the property “inside the campus.” (Tr at 59.) He agreed that CUNY has control over the maintenance and repair of Boylan Hall.
Mr. Elfstrom agreed that anything over one-quarter inch might constitute a tripping hazard, but would not conclude that the depression shown in the photographs was of any particular depth. He agreed that if such a defect was in an area that CUNY was responsible for, that would be a condition he would want to repair. The mechanism for repair to a defect *225 of over one-quarter inch would depend on the circumstances, the first being that it is “inside the Brooklyn College property.” (Tr at 62.) He said
“If it’s over a quarter inch, it will get repaired. If it’s a tree root bringing up a concrete slab, then we would cut out the section, cut out the root, replace the section. If it’s a large amount, they would go to the Dormitory Authority or CUNY as a capital improvement, because the meanings of maintenance, there’s a very fine line between with taxpayers money how much we can spend on certain items.” (Tr at 62-63.)
Shown the photographs of the area on which claimant fell, Mr. Elfstrom agreed that it looked like a tripping hazard. (Exhibit 1A.) He ultimately agreed that such a condition, likely caused by a tree root lifting part of the pavement, would take at least a season (“three months”) to develop (although at first he testified that “it could happen within a week depending on the weather, because concrete is like anything else, it expands and contracts”). (Tr at 70-72.) Viewing the color photograph of the area, he said that “it looks like the sidewalk is raised, and in front, [it] does have a crowning. I see three or four areas that have questionable cracks.” (Tr at 73; exhibit B.) He thought it would require a capital project to repair. He also said that without lifting the slab it could not really be determined if a tree root was causing a problem.
On cross-examination Mr. Elfstrom agreed that the condition appeared open and obvious (exhibit E) and restated that it is the DASNY that owns the property within the fence line of Brooklyn College, and that the sidewalk is owned by the City of New York. (See exhibit D.) He estimated that “easily 4,000, 5,000 people a day walk the sidewalk” including CUNY attendees, employees, high school students, and members of the three synagogues in the neighborhood. (Tr at 78.) He had never heard any complaints about the condition shown in the referenced photograph. (Exhibit D.)
Administrative Code of the City of New York § 7-210, effective September 14, 2003, provides that abutting landowners, unless excepted,[2] may be held liable in tort for failure to maintain a sidewalk in a reasonably safe condition, rather than the City of New York, in derogation of common law.
*226 The code provision provides in pertinent part:
“a. It shall be the duty of the owner of real property abutting any sidewalk ... to maintain such sidewalk in a reasonably safe condition.
“b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk . . . shall be liable for any injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk. . . .
“c. Notwithstanding any other provision of law, the city shall not be liable for any injury to property or personal injury, including death, proximately caused by the failure to maintain sidewalks ... in a reasonably safe condition.” (Administrative Code of City of NY § 7-210.)
Accordingly, the threshold issue for consideration is whether CUNY—as opposed to DASNY—is the abutting “owner” for purposes of imposing a duty upon it to keep the adjacent sidewalks nominally owned by the City of New York reasonably safe. This is particularly significant here because if DASNY is considered the abutting owner, then the court does not have subject matter jurisdiction to hear this lawsuit, which could only be brought in state Supreme Court.[3]
As a matter of course, CUNY has been held to have a duty with regard to the areas within the school grounds when the matter has been considered in the Court of Claims, and, based upon Mr. Elfstrom’s testimony, that certainly seems to have been CUNY’s understanding as well. (See e.g. McCree v City *227 Univ. of N.Y., Ct Cl, Oct. 10, 2013, Marin, J., claim No. 118502, UID No. 2013-016-036.)
Additionally, late claim applications in the Court of Claims stemming from falls on sidewalks apparently outside the college grounds—but abutting CUNY buildings—have been granted, based in part on there being undeveloped facts as to who bears the responsibility, and hesitation about leaving an injured claimant without a remedy. (See e.g. Morris v City Univ. of N.Y., Ct Cl, Nov. 20, 2006, Marin, J., UID No. 2006-016-075;[4] Gardner v City Univ. of N.Y., Ct Cl, July 23, 2012, Weinstein, J., UID No. 2012-049-033.)
As noted in a state Supreme Court decision addressing the applicability of Administrative Code of the City of New York § 7-210 to DASNY as an abutting owner, although DASNY may technically be the owner of CUNY land and facilities, it is a titled owner whose responsibilities as an owner have largely devolved to its statutory tenant. (See Morris v City of New York, 21 Misc 3d 758 [Sup Ct, Kings County 2008].) Thus the Supreme Court in Morris granted DASNY’s motion for summary judgment dismissing the claim, finding that it was CUNY which had the duty to keep the abutting sidewalk areas reasonably safe for pedestrians under the Administrative Code.[5]
This court, therefore, finds that it is CUNY that is obligated under the Administrative Code to maintain the abutting *228 sidewalk area of claimant’s trip and fall in a reasonably safe condition.
Although CUNY’s duty here is to prevent foreseeable risks of harm, it is not the insurer of public safety. Its duty is to exercise “reasonable care under the circumstances” (Basso v Miller, 40 NY2d 233, 241 [1976]) to protect against foreseeable risks of harm. (See Preston v State of New York, 59 NY2d 997, 998 [1983].) For liability to be established claimant must show first that the condition is a dangerous one, and that CUNY had actual or constructive notice of the condition and then failed to act reasonably to remedy it. (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986].) Because an accident occurred does not necessarily mean that the defendant was negligent. (Clairmont v State of New York, 277 AD2d 767 [3d Dept 2000], lv denied 96 NY2d 704 [2001].)
Whether a defective condition exists on the given property so as to create liability depends on the peculiar facts and circumstances of each case, and there is no rule as to depth. (Trincere v County of Suffolk, 90 NY2d 976 [1997].)[6] Before negligence can be found it must be established that the accident causing instrumentality constitutes a dangerous condition, defect, or trap in the first instance. A trivial defect does not subject a landowner to liability. (Tripoli v State of New York, 72 AD2d 823, 824 [3d Dept 1979].)[7] Significantly, “[n]egligence cannot be presumed from the mere happening of *229 an accident. It is incumbent upon the part of claimant to show affirmatively by competent evidence that the injury complained of was caused by reason of some breach of duty by the [defendant]. Negligence must be proven.” (Mochen v State of New York, 57 AD2d 719, 720 [4th Dept 1977].)
The court has reviewed the testimony and photographs offered in evidence and finds that claimant has failed to establish that the sidewalk condition was a dangerous one, as an initial matter, sufficient to establish liability. Thousands of pedestrians walked the same sidewalk daily, without consequence. No evidence of prior accidents at this location was offered. The photographs confirm that the condition of the sidewalk slabs, with some broken pavement areas and irregularities in the slabs, likely associated with tree roots expanding, should not present a problem for an appropriately attentive pedestrian. Such condition was “readily observable ‘by those employing the reasonable use of their senses’ ” (see Persing v City of New York, 300 AD2d 641, 642 [2d Dept 2002] [citations omitted]) and, in this court’s view, is too trivial to be actionable. The condition alleged here was minor, open and obvious and did not constitute a trap or a nuisance. (See Richardson v JAL Diversified Mgt., 73 AD3d 1012 [2d Dept 2010].)[8] No trap or hidden defect is revealed by these photographs. (Exhibits 1, 1A, 2, 3, 4, 5, A, B, C, D, D1, E, F.)
The photographs also call into question the actual depth of the minor broken pavement area (whatever claimant’s testimony might have been as to the supposed depth of two inches), as the ruler utilized in the photographs does not fall into a substantial depression, but rather rests almost flush with the pavement. (See exhibits 4, 5, A, B.) As pointed out by another court reviewing testimony Mr. Elfstrom gave there, his impression that it would be something he might want to repair is not the same as a legal standard as to what constitutes a dangerous condition. (See Morris v City Univ. of N.Y., Ct Cl, July 14, 2010, Marin, J., claim No. 113156, UID No. 2010-016-048.)
*230 While the court is certainly sympathetic to the claimant’s unfortunate accident, not every accident gives rise to liability. It is the claimant’s burden to prove her case by a preponderance of the credible evidence. As the trier of fact and law, charged with assessing the credibility of the various witnesses and evaluating the weight of the evidence, the court finds upon review of all the evidence, including listening to the witnesses testify and observing their demeanor as they did so, that CUNY is not responsible for the claimant’s trip and fall and resultant injury. Claimant has not proved by a fair preponderance of the credible evidence that a dangerous or defective condition existed on the sidewalk along Bedford Avenue abutting CUNY Brooklyn College warranting the imposition of liability.
Although named as a defendant, there was no evidence submitted implicating any liability on the part of the State of New York.
Based on the foregoing, claim No. 123321 is in all respects dismissed.

. Quotations are to pages of the trial transcript unless otherwise indicated, here (tr at 17).

. “The provision does not apply to ‘one-, two- or three-family residential real property that is (i) in whole or in part, owner occupied, and (ii) used exclusively for residential purposes’ (Administrative Code of City of NY *226 § 7-210 [b], [c]).” (See Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 520 n 3 [2008].)

. As a court of limited jurisdiction, the Court of Claims only has jurisdiction over claims against the State of New York and other entities specifically prescribed by statute. (See Court of Claims Act § 9; NY Const, art VI, § 9.) The Court of Claims lacks jurisdiction over DASNY, which is properly sued in Supreme Court pursuant to the provisions of the General Municipal Law. (See Court of Claims Act § 9; Public Authorities Law §§ 1677, 1691 [1]; General Municipal Law § 50-e; see e.g. Diamond v State of New York, Ct Cl, Sept. 4, 2012, Weinstein, J., claim No. 121385, UID No. 2012-049-044.)

. The claim that was ultimately filed after late claim permission was granted was dismissed after trial. (See Morris v City Univ. of N.Y., Ct Cl, July 14, 2010, Marin, J., claim No. 113156, UID No. 2010-016-048.) It appears, however, that the more fully developed factual record showed that the claimant tripped and fell within the campus walkways, not on the city sidewalk.

. Citing Garcia v Dormitory Auth. of State of N.Y. (195 AD2d 288 [1993]) wherein a different precept required of owners was discussed, the Morris court said:
“The court in Garcia declined to apply to DASNY an owner’s statutory obligation to maintain its building in good repair. In Garcia, because the ‘lease is not a standard leasing agreement, but rather a part of an extensive financing arrangement’ (Garcia at 289; see also Green, 173 AD2d at 5-6), the rights reserved to DASNY ‘do not constitute sufficient retention of control to subject [DASNYI to liability for failure to maintain the premises in good repair’ (Garcia at 289; see also Shrenkel, 266 AD2d 369 [where the provisions of the lease placed full responsibility on SUNY to operate, maintain, and repair the dormitory and related facilities and, therefore, the rights reserved to the out-of-possession owner (DASNY) did not constitute sufficient retention and control to subject DASNY to liability]).” (21 Misc 3d at 762.)

. “[T]here is no ‘minimal dimension test’ or per se rule that a defect must be of a certain minimum height or depth in order to be actionable.” (Trincere v County of Suffolk, 90 NY2d 976, 977 [1997].) A court should look at the “width, depth, elevation, irregularity and appearance of the defect along with the ‘time, place and circumstance’ of the injury.” (Id. at 978.)

. Claimant walked from his car to the picnic site across a grass covered portion of the parking lot and fell when he stepped into a hole described as being approximately one foot wide and from eight inches to one foot in depth.
“It is well settled that the State is not an insurer of park visitors; its duty is to keep the facility reasonably safe for its intended uses. Here, there was no evidence concerning the origins of the depression; the duration of its existence was unknown; the terrain surrounding it was not specifically described; the height of the grass at the time of claimant’s mishap was not fixed and there was no indication of its height before and after a normal mowing; the relationship, if any, between grass height and awareness of this particular hole was not detailed at trial; and, lastly, there was a total lack of proof suggesting what constituted proper mowing schedules and procedures. . . . The facts actually developed warrant nothing more than a speculative conclusion that the State might have negligently failed to meet its obligation of maintaining the *229 parking lot in a reasonably safe manner for pedestrians. There is no support for the proposition that the hole represented anything more than a trivial defect generally encountered when crossing open lands or that it was so out of character with the proximate surroundings as to be the foreseeable cause of an accident.” (72 AD2d at 823-824.)

. “[A] property owner may not be held liable in damages for trivial defects, not constituting a trap or nuisance, over which a pedestrian might merely stumble, stub his or her toes, or trip.” (Richardson v JAL Diversified Mgt., 73 AD3d 1012, 1013 [2d Dept 2010] [citations omitted].)